IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHILIP LEO SANDS,                              No. C 10-5315 CW

       Petitioner,                          ORDER DENYING
                                               PETITION FOR WRIT
    v.                                       OF HABEAS CORPUS

GREG LEWIS, Acting Warden, and
THE ATTORNEY GENERAL OF THE STATE
OF CALIFORNIA,

       Respondents.
================================/

    Philip Leo Sands petitions the Court for a writ of habeas
corpus on the grounds that his constitutional rights were violated
due to the admission of illegally obtained wiretap evidence,
prosecutorial misconduct and ineffective assistance of counsel at
trial.  For the reasons discussed below, the Court DENIES the
petition.

BACKGROUND

  On October 11, 2005, the San Francisco District Attorney
charged Petitioner with crimes arising from two separate
incidents.  All facts are taken from the appellate record.

    On September 14, 2001, Robin Clarke was stabbed twice in the
abdomen during an altercation with a group of men, causing life
threatening injuries to his liver.  A few days later, and again at
trial, Clarke identified Petitioner as the person who stabbed him.

    Petitioner was arrested and charged in San Francisco
Superior Court with assault on Clarke.  He posted $100,000 bail
and remained out on bail in August 2003.  The court records

1   indicated that Robert Ramirez was ordered to return to court to

2   testify as a witness in the assault case.

3       Numerous witnesses testified at trial that after the stabbing

4   the relationship between Petitioner and Robert Ramirez changed.

5   Robert Ramirez's brother Michael testified that Petitioner had

6   questioned Robert Ramirez stating, "Someone snitched.  Someone

7   snitched.  What did you say? What did you say?"  Another witness

8   testified that, when asked directly whether he stabbed Clarke,

9   Petitioner failed to deny it.

10      On the evening of July 11, 2003, Ryan Crowley testified that

11  he was driving from North Beach to Daly City with Brendan Burke

12  and Robert Ramirez in his car around 1:30 or 2:00 a.m.  Crowley

13  testified that Burke was "practically incapacitated" and passed

14  out in the car on the way to Daly City.

15      While on the freeway, Crowley's car ran out of gas and he and

16  Robert Ramirez pushed it onto the Ocean Avenue off ramp and parked

17  it on the right side of the road.  Crowley left to buy gasoline

18  and when he returned Robert Ramirez told him that Michael

19  Debergerac's vehicle had driven by, and that Petitioner was with

20  Debergerac.  Crowley testified that Robert Ramirez's attitude had

21  changed and that it seemed that "he wanted to get out of there."

22  After refilling the gas tank, the men got back into the car and

23  proceeded westbound on the Ocean Avenue exit.

24      Crowley drove through a red light and was stopped by a

25  California Highway Patrol (CHP) officer.  The officer arrested

26  Crowley for drunken driving and gave Robert Ramirez the keys to

27  Crowley's Oldsmobile, instructing him to drive the car into the

28  nearby City College parking lot.  The CHP officers told Robert

2

1   Ramirez not to drive the car away, and at 3:33 a.m. the officers
2   left to take Crowley to jail.

3       That same evening, Debergerac was driving a friend home and
4   took the Ocean Avenue exit.  While on the off ramp, he saw Robert
5   Ramirez standing next to a car pulled over on the shoulder.
6   Debergerac testified that he called Petitioner on his cell phone
7   and reported that he had seen "Rob on the freeway stuck" on the
8   Ocean Avenue off ramp.  Debergerac testified that he then went
9   home.

10      Michael Ramirez received a call from Robert Ramirez asking
11  for a ride home from the City College campus.  He went, along with
12  two other friends, to pick him up.  Upon arrival, Michael Ramirez
13  got out of the car and saw that the driver's side window of
14  Crowley's Oldsmobile was broken.  He opened the door and noticed
15  that there was "blood everywhere."

16      At 3:48 a.m., the San Francisco Emergency Communications
17  Department received a 911 call from a person at the City College
18  parking lot reporting an emergency.  The police responded to the
19  scene and officers recovered spent bullet casings from the
20  driver's side of the Oldsmobile.  Thirty bullet casings were on
21  the ground, and three expended bullets were recovered from the
22  inside of the car.  The police later retrieved five bullets from
23  the front passenger compartment door.  According to the medical
24  examiner, Robert Ramirez's death was caused by twenty-two gunshot
25  wounds to the body and a total of thirty-three gunshot injuries.
26  The death was ruled a homicide.

27      Petitioner's brother-in-law, Daniel DeVera, testified that
28  during the first week of August 2003, Petitioner came to his home

United States District Court
For the Northern District of California

3

with a "green bag, pouch" and asked DeVera to "keep it" for him. When DeVera asked what it was, Petitioner told DeVera that it was a gun.  DeVera placed the gun and bag in a closet.

In October 2003, the San Francisco District Attorney obtained a court order allowing a thirty-day interception of communications to and from a number of "target telephones," including Petitioner's home and cell phones.  Monitoring of the calls began on October 6, 2003.  An October 7, 2003 telephone call was taped and played for the jury.  The taped call was a message from Petitioner asking "Daniel" to "hold on to that . . . for me for a while for safekeeping."  Several calls between Debergerac and Petitioner were also played for the jury.

On October 15, 2003, DeVera consented to a search of his home, during which he led the police to another house he owned, where they seized the gun.  The weapon seized from DeVera was a Cobray model SGM11-2A .380-caliber firearm with three magazines that was missing its barrel.  The firearms expert opined that all thirty casings from the scene of Robert Ramirez's murder were discharged by the Cobray firearm, though the missing barrel made it difficult to determine whether the slugs recovered at the crime scene also came from the weapon.  Shown a photograph of Petitioner holding two guns, the firearms expert testified that the weapon held in his left hand was consistent with a Cobray-type M10 or M11 firearm.

Mark Nikolov and Michael Hurley testified that they had seen a "Uzi" type weapon in Petitioner's bedroom years earlier.  At trial, both were shown a photograph of Petitioner holding a weapon

and said that it looked like the one they had seen in Petitioner's bedroom.

A Sprint/Nextel engineer, qualified as an expert in the field of designing and maintaining wireless networks for his employer, plotted a map showing the "footprints" of the different cell sites triggered by Petitioner and Debergerac's cell phones on the night of the murder. The engineer testified that the location of the City College parking lot was serviced by the Glen Park cell site.

The cell phone records showed that Debergerac called Petitioner from within the Glen Park cell site a number of times just prior to 3:00 a.m. on July 12, 2003. Petitioner's cell phone triggered the Skyline cell site at 2:57 a.m. and triggered the same cell site one minute later. After several other calls between them, at 3:23 a.m., Petitioner's cell phone triggered the Glen Park cell site and called Debergerac's phone, which triggered the Kezar cell site. At 3:37 a.m., Petitioner's cell phone again triggered the Glen Park cell site. The records provided further information regarding certain other calls made on Petitioner's cell phone later that day.

Petitioner was charged in an amended information filed on October 11, 2005. A jury trial began the following day. At the conclusion of trial, the jury found Petitioner guilty as charged. On December 20, 2005, Petitioner filed a motion for new trial, which the trial court denied on December 30, 2005. The trial court sentenced Petitioner to imprisonment for thirty-four years to life without the possibility of parole, plus an additional twenty-five years to life.

United States District Court
For the Northern District of California

1    Petitioner filed a timely appeal on January 5, 2006.  On

2    October 31, 2008 the California Court of Appeal affirmed the

3    judgment in an unpublished opinion.  On March 19, 2008, the

4    California Supreme Court denied two separate, pro se, petitions

5    for writ of habeas corpus.  On February 11, 2009, the California

6    Supreme Court denied the petition for review of the direct appeal.

7    On November 10, 2010, the California Supreme Court denied a

8    petition for writ of habeas corpus.  On November 23, 2010,

9    Petitioner filed a petition for writ of habeas corpus in this

10   Court.  On December 1, 2010, this Court issued the Order to Show

11   Cause.

12                          LEGAL STANDARD

13    This petition is brought under 28 U.S.C. § 2254(d), the

14   Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

15   Under AEDPA, a district court may not grant a petition challenging

16   a state conviction or sentence on the basis of a claim that was

17   reviewed on the merits in state court unless the state court's

18   adjudication of the claim:  "(1) resulted in a decision that was

19   contrary to, or involved an unreasonable application of, clearly

20   established Federal law, as determined by the Supreme Court of the

21   United States; or (2) resulted in a decision that was based on an

22   unreasonable determination of the facts in light of the evidence

23   presented in the state court proceeding."  28 U.S.C. § 2254(d).  A

24   decision constitutes an unreasonable application of Supreme Court

25   law if the state court's application of the law to the facts was

26   not merely erroneous, but "objectively unreasonable."  Lockyer v.

27   Andrade, 538 U.S. 63, 75 (2003).

28

United States District Court
For the Northern District of California

6

Moreover, habeas relief is warranted only if the constitutional error at issue is structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 796 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

DISCUSSION

I.   Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). There appear to be claims that are unexhausted in this petition, although Respondents do not raise this issue in their answer.

To comply with the fair presentation requirement, a claim must be raised at every level of appellate review; raising a claim for the first time on discretionary review to the state's highest court is insufficient. Casey v. Moore, 386 F.3d 896, 918 (9th Cir. 2004). Here, two claims were raised for the first time in the petition for writ of habeas corpus before the California Supreme Court:  the ineffective assistance of counsel claim and the claim for violation of due process based on the alleged failure of law enforcement to seal the wiretap communications. The general rule is that a federal district court must dismiss a federal habeas petition containing any claim as to which state remedies have not been exhausted. See Rose v. Lundy, 455 U.S.

United States District Court
For the Northern District of California

509, 522 (1982). However, if the petition is without merit the district court may deny it even if it includes unexhausted claims. See 28 U.S.C. § 2254(b)(2).

## II.  The Wiretap

Petitioner claims that the trial court committed prejudicial error when it allowed illegally intercepted phone calls made by Petitioner to be introduced into evidence, thus violating his due process rights. Petitioner argues that the procedures followed in intercepting his phone calls did not conform with the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, et seq. (1976), and therefore admission of this evidence violated his right to due process under the Fifth and Fourteenth Amendments. First, he contends that law enforcement officials failed to demonstrate the requisite necessity to obtain a warrant for the wiretaps. Second Petitioner claims that the state court record fails to demonstrate that the tapes of the intercepted calls were sealed pursuant to state and federal statutes.

The federal wiretapping statute applies to intercepted communications used against defendants in state court. See Llamas-Almaguer v. Wainwright, 666 F.2d 191, 193-94 (5th Cir. 1982); Hussong v. Warden, 623 F.2d 1185, 1187-91 (7th Cir. 1980). However, there is no clearly established Supreme Court precedent holding that a violation of the Act may result in a due process claim cognizable in federal habeas corpus. See 28 U.S.C. § 2254(d); see also Key v. Walker, 2009 WL 3878070 (N.D. Cal.)(not reported). "If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an

8

United States District Court
For the Northern District of California

unreasonable application of clearly established federal law."

Ponce v. Felker, 606 F.3d 596, 604 (9th Cir. 2010) (quoting Wright

v. Van Patten, 552 U.S. 120, 126 (2008)).

Petitioner cites United States v. Giordano, which upheld the

suppression of wiretap evidence where the district court

determined that law enforcement did not comply with the Act.  416

U.S. 505, 512 (1974).  However, that case does not identify a

constitutional violation, much less a due process violation.  The

decision of the trial court to admit the wiretap evidence in this

case was not contrary to or an unreasonable application of

applicable federal law as determined by the United States Supreme

Court.

III. Prosecutorial Misconduct

Petitioner contends that pervasive misconduct by the

prosecutor denied him a fair trial.  He claims that the prosecutor

attacked defense counsel's integrity and questioned Petitioner on

inadmissible matters.  Respondents argue that the prosecutor did

nothing improper, but even if she had, Petitioner was not

prejudiced by it.

Prosecutorial misconduct is cognizable in federal habeas

corpus.  The appropriate standard of review is the narrow one of

due process and not the broad exercise of supervisory power.  See

Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The right to due

process is violated when a prosecutor's misconduct renders a trial

"fundamentally unfair."  See id.; Smith v. Phillips, 455 U.S. 209,

219 (1982) ("the touchstone of due process analysis in cases of

alleged prosecutorial misconduct is the fairness of the trial, not

the culpability of the prosecutor").

The first factor in determining whether misconduct amounts to a violation of due process is whether the trial court issued a curative instruction.  The court may also take into account the weight of evidence of guilt.  <u>Compare</u> <u>United States v. Young</u>, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) <u>with</u> <u>United States v. Schuler</u>, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor).  Another factor is whether the misconduct was isolated or part of an ongoing pattern.  <u>See</u> <u>Lincoln v. Sunn</u>, 807 F.2d 805, 809 (9th Cir. 1987).  The court may also consider whether the misconduct relates to a critical part of the case. <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972).  Finally, the court may look at whether a prosecutor's comment misstates or manipulates the evidence.  <u>See</u> <u>Darden</u>, 477 U.S. at 182.

A. Alleged disparagement of Defense Counsel

During rebuttal in closing arguments the prosecutor made the following remarks,

> "Defense counsel is a compelling speaker. All the more compelling when he's able to ignore evidence, when he's able to fabricate evidence."

> "Defense counsel says there's no evidence that [Petitioner] carries a knife. That's true, there was no evidence presented. Sometimes evidence does not come in at trial.

> "You're right, you don't. You know why? Because defense counsel objected to [C]larke saying it. He doesn't get the benefit of implying things that he kept you from hearing. That's not fair. That's not justice."

United States District Court
For the Northern District of California

Respondents' Ex. B at 8-9

Petitioner contends that these remarks constituted misconduct. However, defense counsel failed to object timely, waiting until the next day to raise the issue with the trial judge.  The judge found that no admonition was warranted but did add an instruction reminding the jury that statements made by counsel during closing arguments were not evidence.

B. Questioning on Inadmissible Matters

Petitioner alleges that the prosecutor continually attempted impermissibly to introduce evidence of prior convictions.  In one example the prosecutor asked Petitioner why he ran from the police if he did not know that he was a suspect in Clarke's stabbing, implying he had other cause to run from law enforcement.  Defense counsel objected to the questioning as irrelevant, prejudicial and misconduct.  While the trial court sustained the objection, defense counsel did not request an admonishment.

Petitioner also alleges that the prosecutor questioned him about booking photos in order to insinuate an inadmissible prior arrests.  Here again defense counsel failed to raise a prosecutorial misconduct objection.  Moreover, only Petitioner saw the photos, which were shown to him for the purpose of answering questions about how his looks had changed over the years.  These pictures were never shown to the jury and, as the appellate court noted, it was Petitioner, not the prosecutor, who referred to the pictures as "booking photos."

Finally Petitioner argues that the prosecutor asked him whether he had ever used a weapon in or after a fight.  After Petitioner replied in the negative, she asked, "You have backed up

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1 │ Robert Ramirez after he's gotten into a fight by going home and

2 │ getting a gun; haven't you?"  Here, defense counsel objected to

3 │ the admissibility of the line of questioning, and the objection

4 │ was sustained.

5 │     C. Procedural Default

6 │     The state appellate court found that the claims of

7 │ prosecutorial misconduct were procedurally defaulted.  A federal

8 │ court will not review questions of federal law decided by a state

9 │ court if the decision also rests on a state law ground that is

10 │ independent of the federal question and adequate to support the

11 │ judgment.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  The

12 │ Ninth Circuit has recognized and applied the California

13 │ contemporaneous objection rule in affirming denial of a federal

14 │ petition on grounds of procedural default where there was a

15 │ complete failure to object at trial.  Inthavong v. Lamarque, 420

16 │ F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083,

17 │ 1092-93 (9th Cir. 2004); Vansickel v. White, 166 F.3d 953, 957-58

18 │ (9th Cir. 1999).

19 │     In cases in which a state prisoner has defaulted his federal

20 │ claims in state court pursuant to an independent and adequate

21 │ state procedural rule, federal habeas review of the claims is

22 │ barred unless the prisoner can demonstrate cause for the default

23 │ and actual prejudice as a result of the alleged violation of

24 │ federal law, or demonstrate that failure to consider the claims

25 │ will result in a fundamental miscarriage of justice.  Coleman, 501

26 │ U.S. at 750.  Petitioner raises an ineffective assistance of

27 │ counsel claim to show cause for the procedural default, and argues

28 │ that counsel's failure to object prejudiced him.  These claims

**United States District Court**
For the Northern District of California

1  will be discussed below, and are denied.  The claim for relief on

2  the grounds of prosecutorial misconduct is denied.

3      IV.  Ineffective Assistance of Counsel

4      Petitioner argues that his counsel was ineffective and this

5  resulted in both the cause for the default of his claims of

6  prosecutorial misconduct and an independent claim for habeas

7  relief.  A petitioner may show cause for a procedural default by

8  establishing constitutionally ineffective assistance of counsel,

9  but attorney error short of constitutionally ineffective

10 assistance of counsel does not constitute cause.  Vansickel v.

11 White, 166 F.3d 953, 958 (9th Cir. 1999)(quoting Murray v.

12 Carrier, 477 U.S. 478, 488 (1986)).

13     To establish ineffective assistance of counsel, a petitioner

14 must show that (1) counsel made errors so serious that counsel was

15 not functioning as the counsel guaranteed the defendant by the

16 Sixth Amendment, and (2) the deficient performance prejudiced the

17 defense such that "there is a reasonable probability that, but for

18 counsel's unprofessional errors, the result of the proceeding

19 would have been different." Strickland v. Washington, 466 U.S.

20 668, 694 (1984).  A reasonable probability is a probability

21 sufficient to undermine confidence in the outcome.  Loveland v.

22 Hatcher, 231 F.3d 640, 644 (9th Cir. 2000)(quoting Strickland, 466

23 U.S. at 687).

24     Petitioner's ineffective assistance claim is based on his

25 counsel's failure to make contemporaneous objections to the

26 alleged prosecutorial misconduct or request appropriate curative

27 admonitions, thus prejudicing him at trial and forfeiting those

28 claims for appeal.  Defense counsel supports this argument in an

affidavit where he asserts that these omissions were not tactical
decisions at trial, but rather inadvertent errors.  Although
counsel's failure to raise the objection of prosecutorial
misconduct and request relevant curative admonitions may have been
an error in hindsight, his conduct did not fall outside of the
"wide range of reasonable professional assistance."  <u>See</u>
<u>Strickland</u>, 466 U.S. at 689; <u>Wildman v. Johnson</u>, 261 F.3d 832, 838
(9th Cir. 2001).

Even if counsel made errors, in order to prevail on a claim
of constitutionally ineffective assistance and meet the prejudice
requirement for overcoming procedural default Petitioner must show
that the deficient performance harmed the defense such that "there
is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
<u>Strickland</u>, 466 U.S. at 694.

Even if the prosecutor did err in all of the instances cited
by Petitioner, it would still be insufficient to result in a trial
that was fundamentally unfair, so as to violate Petitioner's right
to due process.

There was substantial evidence against Petitioner, including
cell phone records showing him moving to the scene of the crime
during the critical fifteen minute period when the murder
occurred, testimony as to motive from numerous witnesses, and
testimony, along with a corroborating recorded conversation, from
Petitioner's brother-in-law that Petitioner asked him to hold a
gun, which an expert witness opined fired all thirty bullet
casings found at the scene of the murder.  Moreover, Petitioner
was able to present a coherent defense, and testified on his own

14

1  behalf.  The jury was instructed that questions and comments made

2  by attorneys during closing argument were not evidence to be

3  considered.  The appellate court reasonably found that the trial

4  was fundamentally fair, despite the insinuations made by the

5  prosecutor.

6      In light of the evidence presented at trial it is not

7  probable that, had counsel objected to the alleged prosecutorial

8  misconduct and requested curative admonitions, there would have

9  been a different decision in this case.  For these reasons, the

10  claim for ineffective assistance of counsel, as well as the claim

11  of prosecutorial misconduct, is denied.

12                            CONCLUSION

13      For the forgoing reasons, the petition for habeas relief is

14  DENIED.

15      The Court must rule on a certificate of appealability.  See

16  Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll.

17  § 2254 (requiring district court to rule on certificate of

18  appealability in same order that denies petition).  A certificate

19  of appealability should be granted "only if the applicant has made

20  a substantial showing of the denial of a constitutional right."

21  28 U.S.C. § 2253(c)(2).

22      "Where a district court has rejected the constitutional

23  claims on the merits, the showing required to satisfy § 2253(c) is

24  straightforward: the petitioner must demonstrate that reasonable

25  jurists would find the district court's assessment of the

26  constitutional claims debatable or wrong."  Slack v. McDaniel, 529

27  U.S. 473, 484 (2000).  This requires an overview of the claims in

28  the habeas petition and a general assessment of their merits.  It

**United States District Court**
For the Northern District of California

does not require full consideration of the factual or legal bases adduced in support of the claims.  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Nor does it require a showing that the appeal will succeed.  Id.; accord Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000)(issuance of COA is not precluded merely because petitioner cannot meet standard for actually obtaining habeas relief).  The question is the debatability of the underlying constitutional claim, not the resolution of that debate.  Miller-El, 537 U.S. at 342.

     The Court finds that reasonable jurists viewing the record could find the Court's assessment of the claims both of prosecutorial misconduct and ineffective assistance of counsel "debatable or wrong."  Slack, 529 U.S. at 484.  Accordingly, the motion for a certificate of appealability is GRANTED with respect to these two claims.


     IT IS SO ORDERED.


Dated:  11/23/2011

CLAUDIA WILKEN
United States District Judge